Robert V. Prongay (SBN 270796)
   *rprongay@glancylaw.com*
Pavithra Rajesh (SBN 323055)
   *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Benjamin I. Sachs-Michaels
   *bsachsmichaels@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
712 Fifth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 935-7400

Attorneys for Plaintiff Jorge Granja

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE GRANJA, Derivatively on Behalf of AGEAGLE AERIAL SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> J. MICHAEL DROZD, and NICOLE FERNANDEZ-MCGOVERN, BRET CHILCOTT, BARRETT MOONEY, GRANT BEGLEY, LUISA INGARGIOLA, and THOMAS GARDNER, <br><br> Defendants, <br><br> and <br><br> AGEAGLE AERIAL SYSTEMS, INC., <br><br> Nominal Defendant | Case No. <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Jorge Granja ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, AgEagle Aerial Systems Inc. ("AgEagle" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), insider trading (*i.e. Brophy* claim), and contribution for violations of Section 10(b) of the Exchange Act. Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by AgEagle with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     AgEagle produces, supports, and operates technologically advanced drone systems and solutions for the unmanned aerial vehicle ("UAV") industry. Beginning September 2019, the Company purportedly began manufacturing commercial drones to deliver packages and announced a partnership with a "major unnamed ecommerce company."

2.     In April 2020, a video posted by the daughter of an AgEagle director on YouTube showed viewers how to safely unbox the drones and included logos of AgEagle and Amazon. This led to widespread speculation that the major unnamed ecommerce partner was Amazon. Fueling these rumors, AgEagle announced a new facility in Wichita, Kansas, down the street from Amazon's future distribution center. As a result, the Company's stock price surged.

3.     However, on October 14, 2020, media reported that AgEagle's major ecommerce partner was not Amazon. Then, on February 18, 2021, Bonitas Research published a report alleging that certain of defendants had orchestrated a pump and

dump scheme by profiting from equity sales executed while the investing public believed AgEagle had secured a partnership with Amazon.

4. On this news, AgEagle's share price fell $5.13, or 36.4%, to close at $8.96 per share on February 18, 2021, on unusually heavy trading volume

5. These revelations precipitated the filing of a securities class action in this District against AgEagle and certain of its officers and directors, captioned *Lopez v. AgEagle Aerial Systems, Inc., et al.*, Case No. 2:21-cv-01810 (the "Securities Class Action").

6. Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board. The Board is currently composed of five members, four of whom are named in this action. As alleged herein, defendant Mooney knowingly issued misleading statements, and the three members of the Audit Committee should have known of the misleading nature of the Company's public statements. Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.    JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Sections 10(b) and 14(a) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## III.   PARTIES

### Plaintiff

9.      Plaintiff Jorge Granja purchased 1000 shares of AgEagle stock in June 2020 and has continuously owned his AgEagle stock since that date. He currently holds 1,079 shares.

### Nominal Defendant

10.     Nominal Defendant AgEagle is a Nevada corporation with its principal executive offices located at 8863 East 34th Street North, Wichita, Kansas 67226. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "UAVS."

### Defendants

11.     Defendant J. Michael Drozd ("Drozd") served as the Chief Executive Officer ("CEO") of AgEagle from May 18, 2020 to May 24, 2021. He is named as a defendant in the Securities Class Action.

12.     Defendant Nicole Fernandez-McGovern ("Fernandez-McGovern") has served as the Chief Financial Officer ("CFO") of AgEagle since April 2016. She is named as a defendant in the Securities Class Action.

13.     Defendant Bret Chilcott ("Chilcott") is the founder of AgEagle. He served as the President and Executive Chairman of the Company until May 2020. He is named as a defendant in the Securities Class Action.

14.     Defendant Barrett Mooney ("Mooney") has served as the Chairman of the Board of AgEagle since May 5, 2020. Prior to that, he served as CEO of the Company from July 2018 to May 2020. He is named as a defendant in the Securities Class Action.

15.     Defendant Grant Begley ("Begley") has served as a director of the Company since June 2016. He is a member of the Audit Committee.

16.     Defendant Luisa Ingargiola ("Ingargiola") has served as a director of the Company since November 2018. She is the Chair of the Audit Committee.

17.     Defendant Thomas Gardner ("Gardner") has served as a director of AgEagle since June 2016. He is a member of the Audit Committee.

18.     The defendants named in Drozd, Fernandez-McGovern, Chilcott, Mooney, Begley, Ingargiola, and Gardner are sometimes referred to hereinafter as the "Individual Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

19.     By reason of their positions as officers, directors, and/or fiduciaries of AgEagle and because of their ability to control the business and corporate affairs of AgEagle, at all times, the Individual Defendants owed AgEagle and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage AgEagle in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of AgEagle and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to AgEagle and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of AgEagle, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with AgEagle, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

21.     To discharge their duties, the officers and directors of AgEagle were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of AgEagle were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.  SUBSTANTIVE ALLEGATIONS

### A.  Background

22.     AgEagle produces, supports, and operates technologically advanced drone systems and solutions for the unmanned aerial vehicle ("UAV") industry.

### B.  The Individual Defendants Caused the Company to Issue Materially Misleading Statements

23.     On September 3, 2019, the Individual Defendants caused AgEagle to issue a press release entitled "AgEagle Enters the Fast-Growing Commercial Drone Package Delivery Market," stating "Initial Purchase Orders Received and Testing Underway." The press release stated, in relevant part:

> Barrett Mooney, chief executive officer of AgEagle, stated, "Over the past year, there has been a surge of prominent companies, including Alphabet (Google), FedEx, Intel, Qualcomm, Amazon, Target, Walmart, Alibaba, UPS, 7-Eleven, Uber and many others, actively developing commercial drone-delivery service initiatives as part of their long-term strategic plans. These companies intend to leverage the latest in unmanned aerial vehicle (UAV) technologies to deliver food, consumer products, medicines and other types of lightweight freight direct to consumers and businesses in the fastest, most cost efficient and environmentally responsible manner possible – a practical alternative to costly auto transport."
>
> "***We have received our first purchase orders to manufacture and assemble UAVs designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas.*** We look forward to providing greater detail in the near future on AgEagle's plans to address the needs of this highly specialized new market and the

specific role we expect to play in its ongoing development," continued Mooney.

24.     On April 13, 2020, the Individual Defendants caused AgEagle to file its annual report on Form 10-K with the SEC for the fiscal year ended December 31, 2019 (the "2019 10-K"). It was signed by defendants Fernandez-McGovern, Mooney, Chilcott, Begley, Ingargiola, and Gardner. Regarding AgEagle's purported commercial drones for package delivery, the 2019 10-K stated that the first purchase order was from "a major unnamed ecommerce company." Specifically, the report stated, in relevant part:

> In September 2019, the Company announced that it was actively pursuing expansion opportunities within the Drone Logistics and Transportation market, and *reported that it had received its first purchase order from a major unnamed ecommerce company to manufacture and assemble UAVs designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas.* AgEagle is currently working in close collaboration with this new customer on its tethered test flight operations and ongoing development. In association with the initial purchase order, AgEagle recorded its first revenues in the second half of 2019 and will recognize additional revenues from the project in the first quarter of 2020.

25.     On April 15, 2020, the Individual Defendants caused AgEagle to publish a press release entitled "AgEagle Receives Follow-On Purchase Orders to Manufacture Commercial Drones for Package Delivery," which stated, in relevant part:

> AgEagle Aerial Systems Inc. (NYSE American: UAVS) ("AgEagle" or the "Company"), an industry leading provider of technologically advanced commercial drones, aerial imagery and data collection and analytics solutions, today announced *the expansion of scope for its contracted commercial drone work through the receipt of follow-on purchase orders from a major ecommerce company.* Representing significant new revenue, the new purchase orders relate to the continued manufacturing and assembly of drones used for the testing and refining of the client's commercial drone small package delivery vehicles, systems and operations currently in development.
>
> AgEagle Chief Executive Officer Barrett Mooney stated, "*We are thrilled to be expanding our relationship with this key client, which is keen on taking full advantage of AgEagle's specialized expertise in the custom manufacturing and assembly of commercial drones.* We are excited about the continued interest in UAVs for application in the emerging drone logistics and transportation market. In addition to the

material impact this project will continue to have on our annual revenue growth, it is expected to play a broader role in defining AgEagle's long-term value proposition to a growing list of diverse industries. We believe these businesses can benefit from our advanced UAV technology and proven drone development experience to propel their respective growth objectives forward."

26.     On April 29, 2020, a video was posted on the personal website and YouTube channel of defendant Chilcott's daughter. It showed viewers how to safely unbox the drones and included the logos of AgEagle and Amazon side-by-side. Although the video was removed, various copies and screenshots remain scattered across the Internet.

27.     The video led to widespread speculation that the "major unnamed ecommerce" partner was Amazon, causing AgEagle's stock price to surge from an opening price of $0.95 on April 29, 2020 to as high as $5.15 per share during intraday trading on April 30, 2020.

28.     Notably, defendants did not deny that the unnamed partner was Amazon.

29.     On July 7, 2020, defendant Drozd issued a shareholder letter announcing the Company's expansion to a facility in Wichita, Kansas. It stated, in relevant part: "With a goal of materially increasing our manufacturing capacity and proficiencies, AgEagle has finalized its decision to expand our drone-related operations to Wichita, Kansas."

30.     On August 4, 2020, the Individual Defendants caused AgEagle to announce that the new Wichita facility, a 12,000-square foot office and warehouse space, was located at 8863 E. 34th Street North.

31.     As the *Wichita Business Journal* recognized in an article published the same day: "AgEagle's new address is just down Webb Road from Amazon's future distribution center at 4044 N. Toben. There's been speculation of a partnership between the two companies given AgEagle's exploration into drone package delivery." In another article published August 18, 2020, *Wichita Business Journal*

1  stated: "The company has been touting a 'major e-commerce company' since last
2  year as a significant source of future growth. It has been suspected that the client
3  could be Amazon and its pursuit of drone package delivery."

4      32.    Again, defendants did not dispute public speculation that the unnamed
5  partner was Amazon.

6      33.    On September 9, 2020, AgEagle provided an investor presentation,
7  which the Individual Defendants caused to be filed as an exhibit to a Form 8-K filed
8  with the SEC. Therein, the Individual Defendants fueled the rumors by stating
9  "U.S.-based AgEagle will be a leading commercial drone technology, services and
10 solutions provider worldwide," and on the very next slide stating, "Amazon has
11 taught the world to be impatient; people want things faster and cheaper."

12     34.    Rather than dispelling these rumors, the Individual Defendants
13 attempted to hide behind a contractual non-disclosure agreement that purportedly
14 prevented them from identifying AgEagle's ecommerce partner. Specifically, during
15 conference calls held in August and October 2020, defendant Drozd insisted that he
16 could not identify AgEagle's ecommerce partner.

17     35.    The above statements were materially misleading because they failed to
18 disclose that AgEagle lacked a partnership or any business relationship with
19 Amazon.

20     **C.**    **The Truth Begins to Emerge**

21     36.    On October 14, 2020, *Wichita Business Journal* reported that AgEagle
22 never had a partnership agreement with Amazon. In an article entitled "Exclusive:
23 Who's AgEagle's big customer? We now know who it's not." The article stated, in
24 relevant part:

25         Since AgEagle Aerial Systems announced its move to Wichita,
26         speculation has swirled that it could be coming as part of a partnership
        with Amazon.

27         But the retail giant has put the rumor to rest, with a company
        spokesperson telling the WBJ there is no partnership and that Amazon,
28         to date, has not worked with AgEagle in any capacity.

An AgEagle (NYSE: UAVS) spokesperson had no comment following the Amazon statement to the WBJ.

The drone company, which announced plans in July to relocate from Neodesha, has been touting a "major e-commerce customer" since last year as a growth driver but has said it can't identify that customer due a confidentiality clause in its contract.

37.   On February 18, 2021, Bonitas Research published a report revealing that AgEagle "was a pump & dump scheme orchestrated by . . . AgEagle founder and former chairman Bret Chilcott and other UAVS insiders to defraud US investors." The report stated, in relevant part:

In April 2020 rumor of a partnership between Amazon.com, Inc. ("Amazon", Nasdaq: AMZN) & AgEagle was started by a promotional video uploaded to AgEagle's founder and former chairman Bret Chilcott's daughter's personal website and youtube account (the "Promo Video"). Since then, a 54 page due diligence document has circulated on Reddit which at various times referenced the Promo Video and suggested that the AgEagle's partnership with Amazon was real.

We have found no evidence of any "major e-commerce customer" or any drone technology credited to AgEagle other than reference to the Promo Video leaked by AgEagle's founder and former Chairman Bret Chilcott's daughter.

In 4Q'20 an Amazon spokesperson disclosed to reporter Daniel McCoy of the Witchita Business Journal that Amazon specifically does not have any dealings with AgEagle whatsoever.

38.   On this news, AgEagle's share price fell $5.13, or 36.4%, to close at $8.96 per share on February 18, 2021, on unusually heavy trading volume.

**D.   The Individual Defendants Caused AgEagle to Issue a Materially Misleading Proxy Statement**

39.   On May 28, 2020, defendants Mooney, Begley, Ingargiola, and Gardner issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held on July 15, 2020.  In the proxy statement, these four defendants solicited stockholder votes in favor of five management proposals, including: (i) a proposal to elect Mooney, Begley, Ingargiola, and Gardner to new terms as directors; and (ii) a proposal to amend the

Omnibus Stock Incentive Plan (the "Plan") to increase the number of shares authorized for issuance thereunder by 4 million shares.

40. The proxy statement disclosed that the Board had determined that defendant Mooney was not independent.

41. Regarding risk oversight, the proxy statement stated, in relevant part:

> The Board of Directors assists management to determine the appropriate risk level for the Company generally, assess the specific risks faced by the Company and reviews the steps taken by management to manage those risks. While the Board has ultimate oversight responsibility for the risk management process, its committees will oversee risk in certain specified areas.
>
> Specifically, the Compensation Committee is responsible for overseeing the management of risks relating to the Company's executive compensation plans and arrangements, and the incentives created by the compensation awards it administers. The Audit Committee will oversee management of enterprise risks and financial risks, as well as potential conflicts of interests. The Board of Directors is responsible for overseeing the management of risks associated with the independence of the Board of Directors.

42. The Plan authorizes the issuance of shares of the Company's common stock for equity awards to AgEagle's employees and directors. As of May 18, 2020, a total of 578,861 shares remained available for future grant pursuant to the plan. Equity pursuant to the Plan is effectively awarded at the discretion of the Board, according to the proxy statement:

> *Administration*
>
> The Board of Directors or a duly authorized committee thereof, has the authority to administer the Plan. Subject to the terms of the Plan, the Board of Directors or the authorized committee, referred to herein as the committee, determines recipients, dates of grant, the numbers and types of stock awards to be granted and the terms and conditions of the stock option awards, including the period of exercisability and vesting schedule applicable to a stock option award. Subject to the limitations set forth below, the committee will also determine the exercise price and the types of consideration to be paid for the award. The committee has the authority to modify outstanding awards under the Plan. The committee has the authority to adopt, alter and repeal administrative rules, guidelines and practices governing the Plan and to perform all other acts, including delegating administrative responsibilities, as it deems advisable to construe and interpret the terms and provisions of the Plan and any stock option award granted under the Plan. Decisions and interpretations or other actions by the committee are in the

discretion of the committee and are final binding and conclusive on the company and all participants in the Plan.

43.     The proxy statement solicited shareholder approval of an amendment to the Plan to increase the number of shares of common stock reserved for issuance thereunder by 4 million shares. If approved, the total number of shares reserved for issuance would be 4,578,861, which represents 11.75% of the Company's common stock outstanding as of May 18, 2020.

44.     The proxy statement was materially misleading for the following reasons: (i) it misrepresented the Board's activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties; and (ii) it failed to disclose that each of the non-employee directors were interested in their own grants of discretionary compensation.  A reasonable shareholder would have found the truth to be material when deciding to vote for or against these proposals.

45.     On July 20, 2020, AgEagle filed a Form 8-K with the SEC disclosing the results from the votes on the proposals contained in the proxy statement.   In particular: (i) Mooney, Begley, Ingargiola, Gardner were reelected to new terms as directors; and (ii) the amendment to the Plan was approved by stockholders.  The reelection of these four directors and the approval of the amendment to the Plan based on the misleading statements contained in the proxy statement and other public filings was a fundamental link in these directors' continued breaches of fiduciary duties and the continued enrichment of at the expense of the Company's unaffiliated stockholders.

**E.     Defendants Mooney and Fernandez-McGovern Sold Nearly $200,000 in AgEagle Stock While in Possession of Material Non-Public Information**

<u>Mooney</u>

46.     Defendant Mooney is the Company's Chairman with a highly sophisticated understanding of the Company's results and their import.

47.     As set forth herein, defendant Mooney possessed material negative information which he knew was being concealed from investors.    Defendant Mooney consciously acted to exploit his knowledge by selling over 40,000 shares of AgEagle stock (28.5% of his holdings) on September 8, 2020 for $2.59 per share, or $103,600 in proceeds for his substantial benefit.

48.     Defendant Mooney thus used his fiduciary position to enrich himself and failed to discharge his duties by causing the Company to candidly reveal the truth of its business condition.

Fernandez-McGovern

49.     Defendant Fernandez-McGovern is the Company's CFO with a highly sophisticated understanding of the Company's results and their import.

50.     As set forth herein, defendant Fernandez-McGovern possessed material negative information which she knew was being concealed from investors. Defendant Fernandez-McGovern consciously acted to exploit her knowledge by selling 35,000 shares of AgEagle stock (33% of her holdings) on September 8, 2020 for $2.58 per share, or $90,300 in proceeds for her substantial benefit.

51.     Defendant Fernandez-McGovern thus used her fiduciary position to enrich herself and failed to discharge her duties by causing the Company to candidly reveal the truth of its business condition.

## VI.    DAMAGES TO THE COMPANY

52.     As a direct and proximate result of the Individual Defendants' conduct, AgEagle has been seriously harmed and will continue to be.   Such harm includes, but is not limited to:

(a)     Legal fees incurred in connection with the Securities Class Action;

(b)     Any funds paid to settle the Securities Class Action;

(c)     Ill-gotten gains by the insider selling Individual Defendants;

(d)     Issuance of shares to be granted under the Plan; and

(e)     Costs incurred from compensation and benefits paid to the defendants who have breached their fiduciary duties to AgEagle.

53.     In addition, AgEagle's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

54.     The actions complained of herein have irreparably damaged AgEagle's corporate image and goodwill. For at least the foreseeable future, AgEagle will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that AgEagle's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

55.     Plaintiff brings this action derivatively in the right and for the benefit of AgEagle to redress injuries suffered, and to be suffered, by AgEagle as a direct result of breaches of fiduciary duty by the Individual Defendants, violations of Section 14(a) of the Exchange Act, insider trading, and contribution for violations of Section 10(b) of the Exchange Act. AgEagle is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

56.     Plaintiff will adequately and fairly represent the interests of AgEagle in enforcing and prosecuting its rights.

57.     Plaintiff has continuously been a shareholder of AgEagle at times relevant to the wrongdoing complained of and is a current AgEagle shareholder.

58.     When this action was filed, AgEagle's Board consisted of defendants Mooney, Begley, Ingargiola, Gardner and non-party director Brandon Torres Declet.

Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Defendant Mooney**

59.    Mooney is the former CEO of AgEagle, and therefore is not independent under NYSE listing rules, as AgEagle concedes in its proxy statement. As an employee, Mooney derives substantially all of his income from his employment with AgEagle, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  Moreover, as former CEO and as alleged herein, Mooney personally issued the misleading statements alleged herein and is named as a defendant in the Securities Class Action.  As a result, Mooney would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

**Defendants Begley, Ingargiola, and Gardner**

60.    Begley, Ingargiola, and Gardner served as members of the Audit Committee at all relevant times.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations.  As alleged herein, Begley, Ingargiola, and Gardner failed to ensure the integrity of the Company's internal controls, allowing the materially misleading statements to be disseminated in AgEagle's SEC filings and other disclosures.  Thus, Begley, Ingargiola, and Gardner breached their fiduciary duties and are not interested, and demand is excused as to them.

**Defendants Mooney, Begley, Ingargiola, and Gardner**

61.    Mooney, Begley, Ingargiola, and Gardner could not disinterestedly consider a demand to action in connection with the misleading proxy statement issued in May 2020.  These four directors issued the proxy statement knowing that representations made in the Company's SEC filings and other disclosures were misleading with respect to the AgEagle's partnership with a major ecommerce

company, and they did not disclose the same prior to the issuance of the proxy statement or the shareholder vote in July 2020. Had these four directors truthfully and completely revealed the misleading nature of the Company's public statements, Mooney, Begley, Ingargiola, and Gardner would not have been reelected as directors and the amendments to the Plan would not have been approved. As a result, Mooney, Begley, Ingargiola, and Gardner would be interested in a demand regarding the misleading proxy statement, and demand is excused as to them on that basis as well.

### COUNT I

**Against Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney for Breach of Fiduciary Duty**

62.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

63.     Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of AgEagle's business and affairs, particularly with respect to issues as fundamental as public disclosures.

64.     The conduct of Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of AgEagle.

65.     In breach of their fiduciary duties owed to AgEagle, defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

66.     In particular, defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney knowingly or recklessly made untrue statements and/or permitted the

Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

67. As a direct and proximate result of the breaches of their fiduciary obligations by defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney, AgEagle has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

**Against Defendants Begley, Ingargiola, and Gardner for Breach of Fiduciary Duty**

68. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69. Defendants Begley, Ingargiola, and Gardner each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of AgEagle's business and affairs, particularly with respect to issues as fundamental as public disclosures.

70. The conduct of defendants Begley, Ingargiola, and Gardner set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. Defendants Begley, Ingargiola, and Gardner intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of AgEagle.

71. In breach of their fiduciary duties owed to AgEagle, defendants Begley, Ingargiola, and Gardner  willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

72. In particular, defendants Begley, Ingargiola, and Gardner knowingly or recklessly made untrue statements and/or permitted the Company's public filings,

disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

73.    As a direct and proximate result of the breaches of their fiduciary obligations by defendants Begley, Ingargiola, and Gardner, AgEagle has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT III

**Against Defendants Mooney, Begley, Ingargiola, and Gardner for Violations of Section 14 of the Exchange Act**

74.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

75.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.  Specifically, the Company's proxy statement filed on May 28, 2020 violated § 14(a) and Rule 14a-9 because: (i) it misrepresented the Board's activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties; and (ii) it failed to disclose that each of the non-employee directors were interested in their own grants of discretionary compensation.

76.    In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

77.    The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement.   The proxy statement solicited and obtained shareholder votes for: (i) director nominees; (ii) executive compensation; (iii) frequency of votes on executive compensation; (iv) amendments to the Plan; and (iii) ratification of appointment of independent auditor. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

78.    The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

## COUNT IV

### Against Mooney and Fernandez-McGovern – *Brophy* Claim

79.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.    As alleged above, Mooney and Fernandez-McGovern are fiduciaries of AgEagle, possessed material, non-public information of AgEagle, and used that information improperly to profit from sales of AgEagle stock. When Mooney and Fernandez-McGovern directed the stock sales set forth above, they were motivated to do so, in whole or in part, by the substance of the material, non-public information they possessed, and they acted with scienter.

81.    When Mooney and Fernandez-McGovern sold their AgEagle stock, they knew that the investing public was unaware of the negative material information that they possessed. They also knew that if the information were disclosed, the market price of AgEagle stock would be significantly lower. Mooney and Fernandez-McGovern timed their stock sales to take advantage of the investing public's ignorance of the concealed material facts and obtain a higher price for the stock they sold. They thereby benefitted by misappropriating AgEagle's non-public information.

82.    Plaintiff has no adequate remedy at law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT V

**Against Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney for Contribution for Violations of Sections 10(b) and 21D of the Exchange Act**

83.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.     Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney are named as defendants in related securities class action. The conduct of these Defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

85.     AgEagle is named as a defendant in related securities class actions that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If AgEagle is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

86.     As officers, directors and otherwise, defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney had the power or ability to, and did, control or influence, either directly or indirectly, AgEagle's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

87.     Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

88.     Defendants Drozd, Fernandez-McGovern, Chilcott, and Mooney have damaged the Company and are liable to the Company for contribution.

89.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of AgEagle, demands judgment as follows:

A.     Declaring that plaintiff may maintain this action on behalf of AgEagle and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached their fiduciary duties to AgEagle;

D.     Directing AgEagle to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect AgEagle and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.     a proposal to strengthen the Company's controls over financial reporting;

2.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.     a proposal to strengthen AgEagle's oversight of its disclosure procedures;

4.     a provision to control insider transactions; and

5.     a provision to permit the stockholders of AgEagle to nominate at least three candidates for election to the Board;

E.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of AgEagle has an effective remedy;

F.     Awarding to AgEagle restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.     Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

1    DATED:  July 27, 2021        GLANCY PRONGAY & MURRAY LLP

2

3                               By:    */s/ Pavithra Rajesh*

4                              Robert V. Prongay
                             Pavithra Rajesh

5                              1925 Century Park East, Suite 2100
                             Los Angeles, California 90067

6                              Telephone:  (310) 201-9150
                             Facsimile:  (310) 201-9160

7                              Email:  rprongay@glancylaw.com

8                                         prajesh@glancylaw.com

9                              Benjamin I. Sachs-Michaels

10                           712 Fifth Avenue, 31st Floor
                          New York, New York 10019

11                           Telephone: (212) 935-7400
                          Email: bsachsmichaels@glancylaw.com

12

13                           *Attorneys for Plaintiff Jorge Granja*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>AGEAGLE AERIAL SYSTEMS INC. VERIFICATION</u>

I, Jorge Granja, do hereby verify that I am a holder of common stock of AgEagle Aerial Systems Inc. and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint (the "Complaint"). I have reviewed and authorized the filing of the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge, and with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 7/22/2021

Jorge Granja

Jorge Granja